# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 24, 2010

No. 09-20634

Lyle W. Cayce
Clerk

DPC INDUSTRIES, INC.

Plaintiff-Appellant,

v.

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE CO.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, SMITH and HAYNES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff DPC Industries, Inc. appeals the summary judgment rendered against it and the dismissal of its claim for additional insurance coverage against its liability insurer, American International Specialty Lines Insurance Co. We affirm.

I.

This case involves an insurance coverage dispute relating to a release of a toxic chemical from a plant operated by an affiliate of the plaintiff which is one of the insureds under the disputed policy. American International Specialty Lines Insurance Co. ("AISLIC") issued a combined Primary and Umbrella comprehensive general liability policy to the named insured DX Holding

No. 09-20634

Company, Inc.("DX Holding").  The primary policy provides a limit of $1 million per occurrence and a general aggregate limit of $2 million under both Coverage A for general liability for bodily injury and property damage and Coverage D (parts 1 and 2) for pollution coverage.  The umbrella policy provides a second layer of coverage with a policy limit of $10 million under Coverage A and $4 million under Coverage D.  The higher limit under Coverage A was a major reason for this litigation.

Endorsement No. 2 to the policy adds a Broad Form Named Insured definition which includes as a named insured any subsidiary or subsidiary thereof of the named insured.  DPC Industries, Inc. ("Industries"), the appellant in this case, is a subsidiary of DX Holding, the named insured.  DPC Enterprises, Inc. is a subsidiary of Industries.  DPC Enterprises is general partner of DPC Enterprises, L.P. (collectively "Enterprises").  DX Holding and its subsidiaries will be collectively referred to as the DX entities or DX subsidiaries.  Because the limit under coverage A is $10,000,000 and the limit for pollution damage under Coverage D is only $4,000,000, Industries sought to get as much coverage as possible under coverage A as opposed to Coverage D.

Two other provisions of the insurance policy are relevant to this case.  The policy contains a "Separation of Insureds" provision.  That provision reads -

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:
>
> a.    As if each named Insured were the only Named Insured; and
>
> b.    Separately to each insured against whom claim is made or suit is brought.

The effect of this provision is that each insured is treated individually as far as determination of available coverage, except that one insurance limit applies to all insureds collectively.

2

No. 09-20634

The policy also includes an exclusion to Coverage A referred to as the "covered by other coverages exclusion" or "exclusion u."

2.    Exclusions

This insurance does not apply to:

. . . .

u.    Covered by Other Coverages

Any claim or part thereof which may be alleged as covered under this Coverage of this Policy, if we have accepted coverage or coverage has been held to apply for such claims or part thereof under any other Coverage in this Policy. This exclusion does not apply to any claim for medical expenses under Coverage C caused by bodily injury which is covered under Coverage A.

A similar exclusion applies to coverage under Coverage D-2.[1]  These exclusions prevent stacking of insurance coverages provided in the policy and make it clear that the coverage under Coverage A and the coverage under Coverage D-2 for pollution are mutually exclusive for each insured.

Enterprises owns and operates a plant described as a chlorine repackaging facility in Festus, Missouri.  Industries provides technical support and training to the Festus facility.  The accident giving rise to the personal injuries and property damage in this case occurred on August 14, 2002, when chlorine gas was released from the Festus facility.  AISLIC was notified of the accident by Jack Holcomb of DX Service Company.  On August 26, 2002, AISLIC accepted coverage for the claim under the above described policy's Coverage D, subject to

---

[1]  Exclusion a. to Coverage D-1 and D-2 states that this insurance coverage under D does not apply to claims or loss:

a.    Which may be alleged as covered in whole or in part under this Coverage of this Policy, if we have accepted coverage or if coverage has been held to apply for such claim under any other Coverage of this Policy.

3

a reservation of rights. The only insured referenced in the August 26 letter is DX Holding - the parent of Industries and Enterprises. DX's response on August 27, 2002 only mentions coverage for DPC Enterprises, L.P.

Numerous claimants filed claims for bodily injury and property damage resulting from the release. Lawsuits were brought against Enterprises and other subsidiaries of DX Holding. Unsettled claims were consolidated and certified as a class action in a lawsuit styled *Jeanette Adams, et al, v. DPC Enterprises, Del. Inc. et al,* in Missouri state court. Goodwin Brothers Construction Company filed a separate lawsuit against Enterprises, Industries and Jason Wisdom, manager of the Festus facility, in April 2004. The *Goodwin* suit specifically named Industries as a defendant.

Starting in October 2005, Holcomb of DX Service Company began efforts to obtain coverage under Coverage A and thereby obtain the benefit of the higher liability policy limit for subsidiaries of DX Holding who were not owners of the Festus facility. Numerous letters were sent to and responses received from AISLIC. Holcomb notified AISLIC that the claims asserted against DX entities which did not own and operate the Festus plant, including Industries, were entitled to the benefit of coverage A in the policy. Mr. Holcomb noted that those entities do not own and operate the Festus facility and that the allegations involved claims of negligent training, supervision and maintenance of the facility. Accordingly, DX Holding put AISLIC on notice that they were making a claim for coverage under Coverage A of the policy. AISLIC denied coverage under Coverage A on the basis of the pollution exclusion in exclusion g., the professional services exclusion in exclusion I.2.b. and exclusion u. Every letter sent by AISLIC contains a reservation of rights to assert a defense to coverage.

AISLIC entered into multiple settlement agreements with plaintiffs on behalf of the DX entities. Every settlement obtained releases for all DX entities

including Industries. AISLIC also settled the *Goodwin* litigation by paying $450,000 to settle the suit. AISLIC obtained releases for all defendants, including Industries, which is a released party in the *Goodwin* Settlement Agreement. AISLIC also paid defense costs for all the DX entities, including Industries. The *Adams* suit against DX entities including Industries was not settled at this point. Upon exhausting its policy limits under Coverage D-2, AISLIC withdrew its defense.

Industries and its affiliates settled the *Adams* litigation with their own funds in May 2007 for $9,400,000. Industries filed suit against AISLIC in Texas state court for breach of contract, damages and attorneys' fees based on AISLIC's wrongful denial of coverage under Coverage A of the general liability policy and sought reimbursement of its settlement costs from the $6 million differential between the policy limits of Coverage A and the policy limits of Coverage D of the umbrella policy. AISLIC timely removed the case to federal court based on diversity of citizenship. AISLIC filed a motion for summary judgment claiming that exclusion u., the other coverages exclusion,  exclusion g., the pollution exclusion, and exclusion I.2.b., the professional services exclusion, preclude coverage under Coverage A. Industries filed a cross-motion for summary judgment.

The district court granted summary judgment in favor of AISLIC, finding primarily that AISLIC provided coverage to Industries under Coverage D-2 and therefore that exclusion u. precludes coverage under Coverage A. This appeal followed.

## II.

The issue presented to us is whether Industries is entitled to the benefit of the additional limit of liability under coverage A of the defendant's policy. As an initial matter not specifically addressed by the parties, we note that the

No. 09-20634

pollution coverage provided in Coverage D-2 applies to the chlorine release and the injuries and damages resulting therefrom. Coverage D-2 states:

> We will pay those sums that the insured becomes legally obligated to pay as loss because of claims in the coverage territory for bodily injury, property damage or clean-up costs beyond the boundaries of the insured property [within the specified time frame of the policy.]

As described by Industries, the claims against it in the *Adams* and *Goodwin* cases were claims of negligent training, supervision and maintenance of the facility. Industries's role in the DX entities was to provide technical support and training to the Festus facility. Accordingly, claims of bodily injury, property damage and clean up costs arising from Industries' alleged negligence that contributed to the chlorine release fall within Coverage D-2.

Industries argues first that Coverage D-2 does not apply because it does not own or operate the Festus plant. Therefore, it argues that coverage for its liability is under Coverage A. Industries' argument is based on Endorsement No. 9 to the policy which states: "It is agreed that the following location(s) are insured property(ies) under Coverage D - Pollution Legal Liability, subject to all Policy terms, conditions and exclusions and shall be deemed listed in Item 6 of the Declarations." Item 6 is on the first page of the policy and titled "Insured Property: Coverage D Pollution Legal Liability." The Festus facility is listed on the endorsement as an "owned or operated" location. Industries thus argues that Coverage D-2 has no application to the claims against it because it does not own or operate the Festus facility. We agree with the district court's analysis of this issue. Nothing in the policy or Endorsement No. 9 requires that an insured property be actually owned or operated by the specific entity seeking coverage related to that facility.

No. 09-20634

III.

Industries makes two additional arguments that the district court erred in granting summary judgment to AISLIC on this coverage dispute. First, it argues that exclusion u. for prior accepted coverage does not apply because Industries never sought and AISLIC never accepted coverage of it under any other coverage in the policy. Industries states that it only sought coverage under Coverage A and well-settled Texas law gives the insured the right to choose the applicable coverage. In addition, Industries states that when AISLIC merely agreed to defend Industries subject to a reservation of rights, this did not amount to acceptance of coverage. Industries further submits that the settlements paid by AISLIC were on behalf of Enterprises and do not constitute acceptance of coverage for Industries.

Addressing Industries's first argument, we find unhelpful the case law cited by the parties on Texas law purporting to address whether the insurer or insured gets to choose which coverage applies when there is more than one option.[2] None of the cases address the question in this case, which requires an application of the AISLIC insurance contract to the facts in the summary judgment record. Texas law specifically recognizes freedom of contract, including contracts between an insured and insurer, which must be upheld absent strong public policy reasons for holding otherwise. *Am. Intern. Specialty Lines Ins. Co. v. Res-Care Inc.*, 529 F.3d 649, 662-663 (5th Cir. 2008)(internal citations and quotations omitted); *Fairfield Ins. Co. v. Stephens Martin Paving, LP,* 246 S.W.3d 653, 665 (Tex. 2008). Thus, assuming Texas law gives the insured, where the contract is silent, the right to choose among a policy's coverage options, no public policy reason is presented to prevent the parties from

---

[2] Industries relies on *United States Fire Insurance Co. v. Scottsdale Insurance Co.*, 264 S.W.3d 160, 166-70 (Tex. App. - Dallas 2008, no pet.); *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842, 855 (Tex. 1994).

giving this option to the insurer in a contract. We agree with the district court that resolution of this case turns on the terms of the policy.

The relevant portions of the policy provide -

2.    Exclusions

This insurance does not apply to:

.    .    .    .

u.    Covered by Other Coverages

> Any claim or part thereof which may be alleged as covered under this Coverage of this Policy, if we have accepted coverage or coverage has been held to apply for such claims or part thereof under any other Coverage in this Policy. This exclusion does not apply to any claim for medical expenses under Coverage C caused by bodily injury which is covered under Coverage A.

Thus, Exclusion u. states that once AISLIC accepts coverage under any other coverage available under the policy, no coverage is available under Coverage A. This provision plainly gives the insurer the right to accept coverage under Coverage D to the exclusion of Coverage A.

Industries argues next that AISLIC did not "accept coverage" under any coverage of the policy within the meaning of this exclusion because it merely agreed to defend Industries subject to a reservation of rights. It further argues that settlements paid by AISLIC were on behalf of Enterprises, which is a separate entity from Industries.

The facts in this case about coverage of the various DX entities are blurred because neither side did a good job early on to clarify what entities were requesting coverage or what entities were being defended or indemnified by AISLIC. After the accident was reported by Holcomb, who is listed as representing DX Service Company, AISLIC responded and referred to the insured as DX Holding Company. Neither Industries nor Enterprises, the actual

owner of the facility, was mentioned. This pattern continued even when events in the *Adams* litigation and claims in the *Goodwin* case led Holcomb to request coverage under Coverage A in October 2005. In that letter Holcomb did not mention the individual entities requesting coverage under Coverage A by name, referring only to "numerous other entities" who were "additional named insureds." Industries was not mentioned by name until January 2006.

Industries is correct that every correspondence from AISLIC contained language reserving its right to contest coverage so as to avoid waiver of that right. However, it is undisputed that AISLIC paid to defend Industries from claims arising out of the chlorine gas leak. AISLIC argues that payment of defense costs means that it "accepted coverage . . . for such claims" because the policy defines the term "claim" as a demand alleging liability for a "loss under Coverage D-1 or D-2." Further under the policy, "Loss, as used in Coverages D-2 and D-2, means: . . . b. Costs, charges and expenses incurred in the **defense**, investigation or adjustment of claims." (emphasis added). Thus payment of defense costs is payment of a claim under the terms of the policy.[3] The district court accepted this argument.

However, we need not decide whether providing a defense under a reservation of rights under an eroding policy is equivalent to "accepting coverage" to trigger exclusion u., because the record contains uncontradicted evidence that AISLIC provided indemnity coverage to Industries. Industries

---

[3] Coverage D under the primary policy (which was followed in form by the umbrella policy) contained this provision: "Defense costs, . . . reduce the applicable limit of insurance." Thus, unlike the typical comprehensive general liability policy where defense costs are excluded from the calculation of the policy limits, Coverage D was an eroding policy under which defense costs "count" against and "erode" the policy limits. *See North American Specialty Lines Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 559 (5th Cir. 2008)("In many liability policies, the policy limits refer only to the indemnity obligation . . ., and the obligation to defend a liability suit is not capped by the policy limits. In an eroding policy . . the insurer's payments to defense counsel to defend the liability suit count against policy limits.").

was named as a defendant in the *Goodwin* case as early as April 2004. The record contains a Settlement Agreement and Release of Claims, dated September 2006, to which Industries is a released party. AISLIC paid $450,000 for this settlement. Industries argues that because the payments to claimants under this agreement were made by Enterprises and reimbursement from AISLIC went to Enterprises, this does not constitute acceptance of coverage of Industries as a separate entity. Industries cites no case law for this proposition. Qualification for "acceptance of coverage" does not depend on whether or how the settlement was apportioned between Enterprises and Industries and the other named defendants covered by the Settlement Agreement. Industries was a named defendant in the case and a released party to the Settlement Agreement obtained as a result of the insurer's payment. Industries clearly benefitted from the releases obtained in that agreement. Accordingly, the district court did not err in finding that AISLIC accepted coverage of Industries under Coverage D-2 of the policy and thus Industries was precluded from coverage under any other provision of the policy because of the anti-stacking provision in exclusion u.

## CONCLUSION

For the reasons stated above, we agree with the district court that AISLIC accepted coverage under Coverage D[4] of the policy which triggered exclusion "u" precluding coverage under Coverage A.[5] We therefore affirm the district court's judgment.

AFFIRMED.

---

[4] Having contracted for and paid a premium based upon both a lower total limit for Coverage D and an eroding policy, the insured cannot now rewrite the policy. *See* 541 F.3d at 559 ("[I]f the insured wanted a policy that had an unlimited defense obligation, rather than an eroding one, it should have contracted for such a policy.")

[5] As a result, we need not decide whether the pollution exclusion or professional services exclusion of Coverage A would bar coverage under that section.